Honorable John H. Chun

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

M.S. a minor, by and through her parents and legal guardians, DAVID STRODE and SARAH STRODE,

Plaintiff,

v.

WINSTON BROWN individually, acting under color of State law; LUKE CONNOLLY, individually, acting under color of State law; DAVID OTEBELE, individually, acting under color of State law; and, RACHEL SANDERS (STRAW), individually, acting under color of State law,

Defendants.

CIVIL ACTION NO.: 2:25-CV-02056-JHC

**PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS**

**NOTED FOR HEARING:**

**Thursday, March 19, 2026**

Defendants asked this Court to *protect Defendants from producing discovery*. Dkt. 27. Defense counsel (despite having possession, custody and control over all responsive documents) claimed that none of the Defendants had "possession, custody, or control" of *any* responsive documents. Because of the position taken, M.S. did not receive *any* documents in response to her discovery requests. None.

Late last week (Friday, February 20, 2026), this Court gave Defendants the benefit of the doubt. The Court denied Defendants' Motion for a Protective Order because, essentially, there is nothing to protect if Defendants *truly* had no access to responsive documents. Dkt. 51.

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 1
CASE NO. 2:25-CV-02056-JHC

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

In its Order (Dkt. 51), the Court emphasized Defendants' bold position ("Defendants argue that the documents at issue are not within their possession, custody, or control."). In the next sentence, this Court wrote that M.S. has "cast doubt on that argument." This Court's phrasing was a harbinger.

- What if Defendants could, in fact, access these documents?
- What if, at some point, Defendants thought it would be strategically advantageous to use these documents in their own defense?
- Would defense counsel have the audacity to use these documents on behalf of Defendants after telling this Court that these documents "are not within Defendants' possession, custody, or control" -- ?
- What if Defendants moved to dismiss *all* of M.S.'s claims, telling this Court that M.S. "lacks evidence," while at the same time, holding back critical evidence?
- What if each of these things actually happened?

This is not a game. This is a case about a little girl who was catastrophically injured for life. These documents include *damning evidence of Defendants' role* in causing that harm. For Defendants (and defense counsel) to withhold these documents while, at the same time, asking this Court to dismiss M.S.'s claims is not only unfair, it is craven. This is why sanctions exist – to prevent an unfair playing field and to punish those who do not abide by the most basic rules of discovery.

## I.      INTRODUCTION

M.S. requests that the Court impose sanctions against Defendants and defense counsel (Special Assistants Attorney for the Office of the Attorney General) for serious discovery abuses. Long-existing, critical documents, within the exclusive custody and control of defense counsel and these Defendants, were not disclosed for two months. These documents (1,015 pages) include *critical evidence*, but were not turned over until February 20, 2026.

The withheld documents were produced *after* Defendants and their attorney: (1) attempted to dismiss each of M.S.'s claims in their entirety; (2) filed a Motion for Protective Order to prevent the production of documents; and (3) frustrated M.S.'s attempts to prepare expert witnesses. These

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 2
CASE NO. 2:25-CV-02056-JHC

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

discovery abuses warrant the most severe sanctions available to the Court.

The documents are clearly responsive to M.S.'s discovery requests (or they would not have been disclosed). The documents were clearly within the custody and control of Defendants (otherwise Defendants would not have been able to produce them), and these documents were *prepared many years ago*. These documents existed this entire time.

As held by the Supreme Court of the State of Washington, subjective belief or good faith does not shield an attorney from sanctions under the rules. *Physicians Insurance exchange v. Fisons Corp*, 858 P.2d 1054 (1993). Federal courts are equally clear, mandating that the Courts "employ an objective standard of reasonableness and do not consider the attorney's subjective good faith." *Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025); *see also Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 892 F.2d 802, 811 (9th Cir. 1989) (holding that Rule 11 does not allow for a "pure heart, empty head" defense.) (citation omitted).

Defendants and their attorneys owed M.S., a catastrophically injured little girl, and this Court, the duty to conduct a diligent inquiry to ensure that these critical documents were produced. Sanctions are necessary to punish, deter and educate Defendants and their attorneys. Sanctions are also warranted to compensate M.S.

## II.   STATEMENT OF FACTS

### A.   Assertions Made to the Court

Defendants and their attorneys made the following misrepresentations to this Court -- over and over again:

#### 1.   *Defendants do not have any documents in their possession, custody, or control*

While withholding evidence, Defendants repeatedly asserted that DCYF documents are not in their possession, custody or control.

On November 20, 2025, in *L.S. v. Bolduan*, the attorneys for Defendants admitted that they controlled which documents Defendants possessed:[1]

---

[1] The Plaintiff in *L.S. v. Bolduan*, is M.S.'s brother. *See* Western District of Washington, Case No. 3:25-cv-05621 at Dkt.38. Defendants are all DCYF social workers represented by the same attorneys as this litigation. Both cases are facing the same issues related to the individual defendants' withholding DCYF documents on the claim that they not in their "possession, custody or control."

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 3
CASE NO. 2:25-CV-02056-JHC



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

From: Amy Craft <acraft@serpeandrews.com>
Sent: Thursday, November 20, 2025 12:31 PM
Subject: RE: L.S. ███ - Federal Case - Letter from Craft to Moody re Protective Order

David,

They only have possession, custody, and control of documents we (their counsel) provided to them. And we are providing to Plaintiff today in our discovery responses what we sent to them.

For months, Defendants kept telling this Court -- and M.S. -- that DCYF records were "not in their possession, custody, or control." They lodged this objection in response to nearly every discovery request, and Defendants moved for a protective order on this same basis.[2]

### 2. Defense counsel said that the documents were already obtained

While withholding key evidence, Defendants claimed that DCYF's production of documents in a separate lawsuit, involving different parties, and different claims, was sufficient:

> "Defendants note that **Plaintiff has already obtained a trove of documents** from DCYF in the State Court Case."[3]

Defendants told this Court that they had already produced all responsive documents in the State case:

> "Plaintiff's requests to Defendants, which plainly contemplate the production of DCYF records **that Plaintiff already has several times over, are also unreasonably cumulative and duplicative**[.]"[4]

This cock-sure assertion (M.S. "already has several times over") was also false.

*After* moving for Summary Judgment to dismiss M.S.'s claims, Defendants produced over a thousand pages of documents never previously disclosed — in either case (Federal **or** State).

### 3. M.S.'s claims should be dismissed for lack of evidence

While withholding DCYF's documents, Defendants moved to dismiss M.S.'s claims, arguing she lacked "any evidence" to survive summary judgment: "**the record is devoid of any**

---

[2] Declaration of David P. Moody ("Moody Decl."), at ¶¶ 5-7; Ex. 1.
[3] Dkt.27 at p.10.
[4] *Id.* at p.11.

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 4
CASE NO. 2:25-CV-02056-JHC

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**evidence** to suggest that M.S. was at a substantial risk of harm[.]"[5] It was a ruse. Defendants were in control of these documents *the entire time*.

**B.      Defendants' Request for a Protective Order**

On November 26, 2025, Plaintiff served each of the four individual Defendants with Plaintiff's First Interrogatories and First Requests for Production. Responses were due December 26, 2025. The requests sought documents central to Plaintiff's §1983 claims.[6]

Instead of producing responsive documents, each Defendant referred Plaintiff to DCYF's production in a separate state court lawsuit -- a lawsuit involving different parties, different claims and different legal standards.[7]

In response to nearly every Request for Production, Defendants stated that they lacked the possession, custody, or control of any responsive documents:[8]

> **REQUEST FOR PRODUCTION NO. 1:** Produce each and every document that refers or relates to any investigation of abuse, neglect or exploitation involving Matilda Strode.
>
> **RESPONSE:**
>
> Defendant objects to this request as unduly burdensome because it seeks material from him which he does not have in his possession, custody, or control, and which he does not have the legal right to obtain.

Defendants produced nothing. They did not create a privilege log.[9]

On December 23, 2025, Defendants moved for a Protective Order.[10] Defendants asked this Court to endorse their position that Defendants lacked control or access to any DCYF records:[11]

> **[N]one of the Defendants currently involved in this lawsuit have control over the documents requested by Plaintiff,** to the extent these requests seek documents held by the Department of Children, Youth and Families ("DCYF")
>
> …
>
> **Defendants do not have any legal right to obtain on demand documents possessed by DCYF.**[12]

---

[5] Dkt.43.
[6] Moody Decl., at Ex. 1.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] Dkt.27.
[11] Dkt.27-7.
[12] *Id.*

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 5
CASE NO. 2:25-CV-02056-JHC

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Plaintiff opposed the Motion because Defendants' attorneys possessed all responsive documents. Based on experience, M.S.'s attorneys suspected that additional documents must, in fact, exist.[13] As this Court noticed, M.S. "cast doubt" on the bold, unequivocal assertions made by Defendants and their attorneys.

Meanwhile, this same dispute was playing out in M.S.'s older brother's case, *L.S. v. Kirsten Bolduan et. al.*[14] On February 12, 2026, Judge Chun held that Defendants do, in fact, have custody and control when they can demand responsive records from their attorneys.[15]

Judge Chun established the standard, and the consequences, for withholding discoverable documents in an attorneys' possession:

> A client's right to demand materials from their attorney, and therefore the scope of discoverable information, is limited to documents that are "**gathered or created by [a client's] attorneys pursuant to their representation of that client.**" Am. Soc'y For Prevention of Cruelty To Animals v. Ringling Bros. & Barnum & Bailey Circus, 233 F.R.D. 209, 212 (D.D.C. 2006).
>
> …
>
> [The Court] thus acknowledges the practical reality that Defendants' attorneys may be able to access and consult DCYF's records in support of Defendants' representation in this action, despite having initially received the documents in connection with their separate representation of DCYF in the state court case. **If this were to occur, either now or in the future, the Court would view such documents as collected by Defendants' attorneys pursuant to their representation of Defendants, thereby bringing the DCYF records within the permissible scope of discovery.**
>
> In such a situation, **Defendants would need to produce the documents and could face sanctions for failing to disclose possession of the records** or for withholding them absent a proper assertion of privilege.[16]

On February 3, 2026 -- after months of withholding responsive documents from Plaintiff and representing to this Court that Defendants lacked access to DCYF's records -- Defendants attached seven exhibits to their Response to Plaintiff's Motion for Partial Summary Judgment.[17]

---

[13] Dkt.34.
[14] Moody Decl., at ¶ 9.
[15] *Id.* at Ex. 2.
[16] *Id.* at pp. 7, 12.
[17] Dkt.42, Dkt.43.

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 6
CASE NO. 2:25-CV-02056-JHC

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

None of these exhibits were produced in discovery, attached to a declaration, or had otherwise been disclosed.[18]

These filings confirmed what Plaintiff suspected all along: Defendants were able to "access and consult DCYF's records in support of Defendants' representation … thereby bringing DCYF records within the permissible scope of discovery."[19]  Defendants' previous representations to Plaintiff **and this Court**, were not true.  **Defendants had possession, custody, or control of DCYF's documents the entire time**.

On February 13, 2026, Plaintiff filed a Motion to Strike the records attached to Defendants' Response to Plaintiff's Motion for Partial Summary Judgment.[20]  Plaintiff's Motion to Strike establishes that the exhibits attached to Defendant's Motions are unauthenticated in violation of FRCP 56(c)(4) and were improperly withheld from discovery in violation of FRCP 37(c)(1). Without these exhibits, Defendants' Response to Plaintiff's Motion for Summary Judgment lacks any evidence to rebut M.S.'s Motion for Summary Judgment (Dkt.39).[21]

On February 20, 2026, this Court denied Defendants' Motion for Protective Order, noting Plaintiff's belief that Defendants always had custody or control of documents:[22]

> Defendants argue that the documents at issue are not within their possession, custody, or control.  Plaintiff has cast doubt on that argument.  *See* Dkt. ## 48 & 50.  For this reason, the Court DENIES the motion without prejudice.

//

---

[18] *Id.* Defendants attached previously withheld documents including M.S.'s dependency petition (Dkt. 42-9), M.S.'s Shelter Care Order (Dkt. 42-10), DCYF case notes (Dkt. 42-10), and emails (42-14).

[19] Moody Decl. at Ex. 2.

[20] Dkt.48.

[21] Plaintiff's Motion to Strike is noted for hearing on March 6, 2026.

[22] Dkt.51.

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 7
CASE NO. 2:25-CV-02056-JHC

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**C.    Documents Produced for the First Time on February 20, 2026**

Around 4:00 p.m. on Friday, February 20, 2026, Defendants doubled-down on their discovery violations, producing even more records that had been in their possession the entire time.[23]

Two months after complete discovery responses were due -- and just two court days before Plaintiff's deadline to respond to Defendants' Motion for Summary Judgment -- Defendants dumped over a thousand pages of documents that had <u>never</u> been produced, <u>not even in the State case</u>. These new documents include hundreds of pages of internal communications between the Defendants, and an internal investigative report, the Aiden's Act Review.[24]

Two documents stand out: (1) a January 27, 2022 email; and (2) the Aiden's Act Review. Both documents were created **four years ago**. Each is clearly responsive to Plaintiff's discovery requests. The most basic search would have identified these critical documents.

1.    <u>January 27, 2022 email</u>.  For the first time, Defendants produced an email between Defendants David Otebele and Luke Connolly showing that Defendants never provided the Shelter Care Order to Ms. Barnett:[25]

| From: | Otebele, David (DCYF)[/O=WA.GOV/OU=DSHS/CN=RECIPIENTS/CN=DCFS_00/CN=OTDA300] |
| Sent: | Thur 1/27/2022 4:48:05 PM (UTC-08:00) |
| To: | Connolly, Luke (DCYF)[luke.connolly@dcyf.wa.gov] |
| Cc: | Baker, Chad (DCYF)[chad.baker@dcyf.wa.gov] |
| Subject: | Kelley case |

Hey Luke please respond to these.

I know your served the parents, did you file with the AAG and Court. If not, please do so. We need to upload it as well.

The placement paperwork with the grandmother, did you send an email regarding it?  If so, please find the email and if not, why?

This is a critical admission on a central issue.  There is no justification for withholding it. Defendants have had the January 27, 2022 Defendant Otebele email for four years.  It is <u>an email sent between two of the named Defendants, on the date of the incident, and Plaintiff's name is in the subject line</u>.  Nothing in the email is redacted.  The most basic search of Defendants' records

---

[23] Moody Decl., at ¶ 14.
[24] *Id.*
[25] *Id.*, at Ex.3.

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 8
CASE NO. 2:25-CV-02056-JHC

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

would have produced it.  Instead, Defendants buried it.

This email supports Ms. Barnett's testimony that Defendants *never* provided her with the Shelter Care Order or discussed any of the restrictions contained in that Order.[26]  This email alone supports Ms. Barnett's declaration in which she testifies that none of the Defendants ever shared the Shelter Care Order with her.[27]

2.    **Aiden's Act Review**.  Defendants also withheld the Aiden's Act Review until February 20, 2026.[28]  Aiden's Act (RCW 26.44.290) requires internal investigation into near-fatality injuries to children -- focusing specifically on the actions of the individual "caseworker or other employee of the department."[29]  It is difficult to imagine a more important document.

The Review is an internal investigation into how Defendant's botched their duties and placed M.S. at a grave risk of bodily harm.  It is directly relevant to Plaintiff's §1983 claims against the named Defendants.

By Statute, the Aiden's Act Review must be disclosed in discovery.[30]  Although its use is limited, the Review identifies admissible evidence forming the basis of the its findings: evidence including internal emails, incident reports and key witnesses.

In addition to being discoverable, the Aiden's Act Review was completed *four years ago* (February 24, 2022).  It was readily accessible and impossible to miss.[31]  It contains M.S.'s birth name 74 times, Defendant Connolly's name 42 times, and Defendant Otebele's name 19 times.

---

[26] Dkt.40-12 at ¶ 44.

[27] *Id.*

[28] Moody Decl., Ex.4.

[29] *See also* https://komonews.com/news/local/aidens-act-aims-to-protect-wash-kids-from-abusive-parents ("Aiden's family came to Olympia to urge passage of 'Aiden's act' (SB 5888) to **require DSHS to hold their case workers accountable in "near death" situations** and require full investigations.") (emphasis added).

[30] RCW 74.13.640(4)(a).

[31] Defendant blames the Friday, February 20, 2026 document dump on the need to process e-mail messages.  This document is not an email.

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 9
CASE NO. 2:25-CV-02056-JHC

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**STATE OF WASHINGTON**
**DEPARTMENT OF CHILDREN, YOUTH, AND FAMILIES**
Workplace Investigations Unit
1500 Jefferson Street, SE • P.O. Box 40975 • Olympia WA 98504-0975

**Aiden's Act Review**
[M.S.], 1 month old
February 24, 2022

Review completed by: KC Mattingly-Nelson

**Background**
Second Substitute Senate Bill 5888, also known as "Aiden's Act" was passed unanimously by the House and Senate and signed into law on May 18, 2015. It requires the department to review employees' work to determine if violations of policy, rule or statute occurred with near fatality cases associated with Child Protective Service (CPS) Investigations open in the last twelve months.

**Region:** 4
**Office:** King West

**Case # 2664377**
Identified Child: [M.S.], DOB: December 14, 2021
Mother: S.K., DOB: ███████
Father: Trevor Kelley, DOB: July 31, 1991
Sibling: J.J.K., DOB: ███████

Assigned CPS Investigator: Luke Connolly, Social Service Specialist 3- CPS Investigator. He was assigned the case on December 15, 2021.

Assigned CPS Supervisor: David Otebele, Social Service Specialist 5, CPS/FAR Supervisor. He was assigned the case on December 15, 2021.

The Review, a document created by Defendants' employer, is 12 pages long and replete with the evidentiary basis for Plaintiffs to rebut Defendants' Motion for Summary Judgment.[32]

Defendants' conduct -- moving for **complete** summary judgment on all of M.S.'s claims, while withholding critical evidence, violates the Federal Rules of Civil Procedure and this Court's February 12, 2026 Order.

This Court's denial of Defendants' Motion for a Protective Order (Dkt. 51) did not trigger the production of these critical documents. If Defendants truly had "no possession, control, or custody" of these documents (as they repeatedly told this Court), they could not have produced them (or used documents to defend themselves in response to M.S.'s Motion for Summary Judgment.). Defendants (and their counsel) **_did_** have access to these documents – critical documents with key evidence supporting M.S.'s claims.

---

[32] Because the Aiden Report is not admissible, Plaintiff will not quote the report. However, Plaintiff invites this Court to review this document *in camera*.

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 10
CASE NO. 2:25-CV-02056-JHC

**D.      Consequences of Withheld Discovery**

Evidence must be produced so that parties can identify deponents and take depositions. Experts rely on the documents to form opinions. Parties develop theories based on the evidence. After reviewing the evidence, parties can send follow-up discovery requests for records implicated/referenced by the produced documents. **None of this is possible when one side withholds records**.

Plaintiff could have tailored discovery requests based on the Aiden's Act Review. The discovery would have focused Plaintiff's discovery to further establish that Defendants knew of M.S.'s foreseeable, imminent harm and acted with reckless disregard for her safety.

Prior to the summary judgment motions, Plaintiff could have sent Requests for Admissions confirming every piece of information contained in the Review. Plaintiff could have sent Interrogatories about key statements in the Review. This discovery would have further narrowed the issues. Not producing discovery (which was in one's control the entire time) is profoundly debilitating, causing a ripple effect of lost opportunities, do-overs, and wasted time.

Defendants' motive is clear. Defendants' attorneys moved to "protect" their clients from producing discovery. Defendants hoped the case would settle at mediation and this Court would take time to rule on discovery. If the case settled – or this Court entered Defendants' Protective Order -- Defendants would have never produced the documents.

The gamble backfired. The Court leaned into defense counsel's assurances that Defendant had "no possession, custody, or control" and held off on a definitive ruling while things played out. Then, things unraveled. Defendants finally decided they had no choice but to produce critical evidence (evidence in Defendants' possession, custody and control for years), two days before a summary judgment response deadline.

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX



*"Let's go back to the scenario in which none of this is my fault."*

### III.    AUTHORITY

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. **Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation**." *Empey v. Caliber Holdings LLC*, No. 3:23-CV-05170-RJB, 2025 WL 1414080, at *3–4 (W.D. Wash. May 15, 2025).

The Federal Rules of Civil Procedure are "violated when advocates attempt to use discovery tools as tactical weapons" through "unnecessary use of defensive weapons or evasive responses." *Id.* "**Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents**" and "deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism." *G-K Props. v. Redevelopment Agency of City of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978).

Rule 37(b)(2)(A) authorizes the court broad authority to impose sanctions for a party's failure to respond to interrogatories, requests for production or a discovery order, "up to dismissal of part or all of the party's claims[.]" *Sanchez v. Rodriguez*, 298 F.R.D. 460, 463 (C.D. Cal. 2014); *Stone v. Pfeiffer*, Case No. 1:21-CV-01461-ADA-SAB, 2023 WL 5918112, at *1 (E.D. Cal. Sept. 11, 2023) ("Federal courts possess broad powers to impose sanctions against parties or counsel

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

for improper conduct during litigation.").

Sanctions serve to punish, educate and deter parties from discovery abuses and "should be levied contemporaneously with the offending misconduct." *Matter of Yagman*, 796 F.2d 1165, 1183 (9th Cir. 1986). "[P]rompt action helps enhance the credibility of the [Federal Rules] and, by deterring further abuse, achieve its therapeutic purpose." *Id.* (internal citations omitted).

Sanctions are warranted:

**First**, Defendants affirmatively misrepresented their possession, custody, and control of these documents. In certified discovery responses and in their Motion for Protective Order, Defendants claimed they possessed nothing and moved this Court for an Order authorizing that position. Only when those documents could help Defendants did they attach them to their Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment.

**Second**, Defendants withheld over a thousand pages of critical, clearly responsive documents for more than two months, producing them only after moving to dismiss **all** of M.S.'s claims.

## A.      Defendants Misrepresented Possession, Custody and Control

Rule 11 Sanctions are **mandatory** where Defendants misrepresented their ability to obtain documents.

"Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (citing Advisory Committee Note on Rule 11, 28 U.S.C.App., at p. 576). "An attorney who signs the paper without such a substantiated belief '**shall**' be penalized by 'an appropriate sanction.'" *Id.*

Rule 11 "is aimed at deterring, and, if necessary punishing improper conduct rather than merely compensating the prevailing party." *United States ex rel. Leno v. Summit Constr. Co.,* 892 F.2d 788, 790 n. 4 (9th Cir.1989); *Cooter*, 496 U.S. at 393 ("any interpretation must give effect to the Rule's central goal of deterrence.").

Defendants withheld documents from Plaintiff on the basis that they lacked possession, custody, and control. Defendants did not produce a single document. They did not log a single entry in a privilege log. Instead, Defendants said they lacked responsive documents in their "possession, custody, or control" and, additionally, lacked "the legal right to obtain" the requested documents.[33]

Plaintiff suspected that this was untrue. Defendants' attorneys possessed these records, and/or had an obligation to conduct a rudimentary search. But for weeks, Plaintiff did not have definitive proof. Then, Defendants provided the proof.

Three weeks after telling this Court they possessed no records, Defendants attached withheld documents to their Response to M.S.'s Motion for Summary Judgment. These documents were directly responsive to Plaintiff's discovery requests. Defendants had access to these documents the entire time (through defense counsel or other avenues) and only disclosed selective documents when it benefited their defense.

On February 20, 2026, Defendants produced thousands of additional records. This included internal emails between the Defendants which had never been disclosed to Plaintiff, **in either case** (Federal or State).

The timing is damning. For months, Defendants represented to this Court that they had no legal right to obtain these documents. The moment this Court rejected that position, Defendants produced everything. They always had access. They always had control. They withheld these documents until this Court left them no choice.

Judge Chun's February 12, 2026 Order in *L.S. v. Bolduan et. al* anticipated this exact conduct.[34] The Order warns that Defendants could face sanctions for exactly this conduct.[35] Defendants:

- Represented to this Court that they possessed no responsive documents — then attached those same documents to their Motion for Summary Judgment when

---

[33] Moody Dec. at Ex. 1.

[34] Case No. 3:25-cv-05621-JHC at Dkt. No. 49. A true and correct copy of the February 12, 2026 Order is attached to this Motion as **Exhibit 2**.

[35] *Id.*

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 14
CASE NO. 2:25-CV-02056-JHC

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

disclosure was strategically advantageous.

- Moved this Court for a Protective Order based on representations the party knew to be untrue.

Sanctions are required.

**B.    Defendants' Late Disclosure Does not Excuse Their Discovery Violations**

Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the purposes of Rules 26 through 36. *U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 651 (C.D. Cal. 2007). The requirements of Rule 26(g) requirements are strict, the standard of care is objective, and sanctions are mandatory. *Lee v. Walters*, 172 F.R.D. 421, 432-33 (D. Or. 1997).

A party's failure to initially disclose documents violates Rule 26, and absent justification for that failure, supplementation under Rule 26(e) does not excuse the violation. *Forbes v. 21st Century Ins. Co.*, 258 F.R.D. 335, 338-39 (D. Ariz. 2009). The duty to disclose is ongoing, and parties must supplement this disclosure as **new information** becomes available. *McIntire v. Hous. Auth. Of Snohomish Cnty.*, 731 F.Supp. 3d 1212, 1221 (W.D. Wash. 2024).

Defendants and their attorneys violated the discovery rules by withholding documents. These documents were not new. They were generated four years ago.

In *Finley*, the court sanctioned a party that had "turned over [the evidence] as soon as it was found" because <u>**"[i]t was unreasonable for [the party] not to find it … at the point of its initial disclosures**</u>." *Finley v. Hartford Life & Acc. Ins. Co.*, 249, F.R.D. 329, 332 (N.D.Cal. 2008). Specifically, the court found that the party violated Rule 26(a) because <u>**"a reasonable search would have turned up [the evidence] for disclosure."**</u> *Id.*

Plaintiff expects Defendants to excuse their behavior by stating that these documents were newly provided to them from an "e-discovery vendor." This is a red herring. <u>The withheld documents were created four years ago, contain the names of Plaintiff, her bio-parents, and</u>

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Defendants. An "e-discovery vendor" is not necessary to find these documents -- the most basic search would have found them.[36]

At best, these circumstances reveal a systematic failure to institute proper protocols to fully respond to discovery.[37] At worst, this constitutes an effort by Defendants and their attorneys to hide damaging evidence. Either way, sanctions are mandatory.

**C.    Defendants' Attorneys Violated Their Duty to Ensure Complete Responses**

Rule 26(g) imposes an independent requirement on Defendants' attorney -- separate from their clients -- to certify that a reasonable inquiry has been made with respect to the factual and legal basis for any discovery request or response. *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 555 (N.D. Cal. 1987). An attorney who certifies incomplete and/or inaccurate discovery responses without reasonable justification **must be subjected to disciplinary action**. *R&R Sails Inc., v. Insurance Co. of State of PA*, 251 F.R.D. 520, 525 (N.D. Cal. 2008).

No reasonable justification exists for certifying discovery responses that falsely stated that Defendants did not have possession, custody or control of any documents, or that "Defendants do not have any legal right to obtain on demand [DCYF's] documents."

## IV.    SANCTIONS

M.S. requests this Court impose the following sanctions:

1.  Any and all claims of privilege asserted by Defendants, regarding any document responsive to the discovery propounded by M.S., are hereby waived;

2.  M.S.'s Aiden Act Review may be used as evidence during discovery and at trial;

3.  Each Defendant and Defendants' counsel (jointly and severally) shall pay sanctions of $250,000 to M.S. for discovery violations;

4.  Each Defendant and Defendants' counsel shall file a certification with the Court, swearing under oath that Defendants have produced all documents responsive to

---

[36] The Washington Court of Appeals determined that, in a case involving the State of Washington, a systematic failure within the attorney's office is not a valid excuse. *Beckman v. DSHS*, 102 Wn. App. 687, 695, 11 P.3d 313 (2000).
[37] In *Tobin v. State of Washington*, King County Superior Court Judge Michael Ryan sanctioned the State of Washington for late disclosure of documents, noting the Attorney General's Office's lack of sufficient protocols to ensure that discovery is done in a timely and complete manner. Moody Decl., Ex. 5. Judge Ryan hand-crafted a 12-page Order. M.S. encourages this Court to consider Judge Ryan's reasoning.

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 16
CASE NO. 2:25-CV-02056-JHC

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

M.S.'s written discovery requests.  These certifications must be filed no later than 10 days from the date of this Order;

5.  Payment shall be made within 10 days from the date of this Order; and

6.  Defense counsel shall share this Order with each Defendant.



"JOHNSON, I KNOW TO ERR IS HUMAN BUT FOR ME TO FORGIVE YOU'VE GOT TO PAY FOR THE TRACTOR."

## V.     CONCLUSION

Defendants were banking on mediation and this Court taking a *long time* to rule on discovery motions.  Defense counsel even asked this Court to "protect" Defendants from producing any discovery.  Thank goodness, this Court denied that request.

Defendants believed they would resolve this case at mediation.  If that failed, they would file a Motion for Summary Judgment to dismiss all of M.S.'s claims (claiming that M.S. "lacked evidence").  If Defendants' motion was denied, they would file an appeal to the Ninth Curcuit without ever producing the damning evidence.

But . . . this Court did not drag its feet, there was not a successful mediation, and M.S. continued to push for evidence.  M.S. was correct -- evidence did exist.  All along.  Critical, pivotal evidence that cuts to the heart of these claims.

Time ran out on Defendants' ruse. Finally, Defendants had no choice but to produce critical evidence. This behavior is not okay. It is sanctionable.

I certify that this Motion contains 4,108 words, which complies with the Local Civil Rules.

DATED this 26th day of February 2026.        Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____

David P. Moody, WSBA No. 22853
Marty D. McLean, WSBA No. 33269
Ryan T. Pittman, WSBA No. 57560
Emma R. Morse, WSBA No. 9914046

1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: davidm@hbsslaw.com
        martym@hbsslaw.com
        ryanp@hbsslaw.com

*Attorneys for Plaintiff M.S.*

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 18
CASE NO. 2:25-CV-02056-JHC



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I caused the foregoing document (and all documents filed herewith) to be electronically filed with the Clerk of the Court and served on all parties or their counsel of record as follows:

**VIA ECF FILING:**

Amy Craft
Jonathan D. Stone
Serpe Andrews PLLC
221 First Avenue West, Suite 200
Seattle, Washington 98119

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 26th day of February 2026 at Seattle, Washington.

_____
JeannieBeth Asuncion, Paralegal

PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS - 19
CASE NO. 2:25-CV-02056-JHC

